JASPER M. WHITE v. JEHU H. LEE.

[52 South. 206.]

1. PRINCIPAL AND AGENT. *Unauthorized acts.*

An agent cannot enlarge his authority by unauthorized acts.

2. SAME. *Brokers. Authority to collect. Price.*

An agent empowered to negotiate a sale of land, to whom power to convey is not given, is not authorized to collect any part of the price, although instructed by his principal "to fix the trade so that the purchaser cannot back out."

FROM the circuit of Lauderdale county.

HON. JOHN L. BUCKLEY, Judge.

White, appellant, and another, were defendants in the court below; Lee, appellee, was plaintiff there. From a judgment in plaintiff's favor defendant White appealed to the supreme court. The facts are stated in the opinion of the court.

*Bordeaux & Venable,* for appellant.

An agent authorized to sell real estate, that is, to enter into

a contract of sale, has no authority to collect the purchase money. 1 Am. & Eng. Ency. of Law (2nd ed.) 1008, 1009, and numerous cases therein cited and the copious footnotes and criticism of seemingly conflicting decisions; 31 Cyc. 1368, and many citations on this precise point at the bottom of footnote 21. We especially refer the court to the case of *Mann v. Robinson,* 42 Am. Rep. 771. Every text book on agency that we have consulted lays down this same rule. The rule is just and the reason for it obvious. A real estate agent may have ever so much ability in the matter of procuring purchasers and closing contracts of sale and the owner of land may be desirous of procuring his services for this purpose and yet be wholly unwilling to trust him with the purchase money or any part thereof. The operation of this rule facilitates trading, imposes no hardships on the vendee and throws a just and reasonable safeguard around the vendor.

The plaintiff's seventh instruction eliminated from consideration the questions of (1) Express precedent authority; (2) Subsequent express ratification; (3) Subsequent ratification by silence.

The first clause of this instruction is erroneous and is calculated to mislead the jury in that it attempts to create authority to collect the purchase money by implication, which does violence to the proposition of law established, *supra;* and further it assumes that the collection of the purchase money is usual and customary when there is absolutely no evidence to support such an assumption.

We come now to the consideration of the body of the instruction, which embodies the plaintiff's idea, approved by the trial court, of what will, in law, take the place of authority from White, and we find that White must be deemed to have authorized the collection of the purchase money, if the jury believe the following: (1) That White told Sheely to bind the

trade; (2) That Sheely acted in good faith; (3) That the collection of the money was a reasonable precaution.

*Baskin & Wilbourn,* for appellee.

Under Sheely's testimony White not only authorized the collection of the two hundred dollars but after knowledge of it acquiesced in it, and ratified it, and did not promptly repudiate it to Lee. Again Sheely was impliedly authorized to collect the money whether expressly authorized or not.

An agent authorized to act for his principal by oral appointment in the sale of land is impliedly authorized to collect so much of the purchase price of the lands as is to be paid in cash as an incident to the sale. See the following authorities: *Alexander v. Jones* (Iowa), 19 N. W. 913; Story on Agency, section 58; *Johnson v. Magruder,* 15 Mo. 365; *Zerby v. Grisgsby,* 9 Leigh. (Va.) 387; *Higgins v. Moore,* 6 Bosw. 344; *Goodale v. Wheeler,* 11 N. H. 424; *Hoskins v. Johnson,* 5 Sneed. 469.

Argued orally by *R. M. Bordeaux,* for appellant.

MAYES, C. J., delivered the opinion of the court.

Lee brought this suit against White and Sheely for the purpose of recovering the sum of $200. While the suit is nominally against both, it is really a suit against White. The substantial facts are as follows:

White owned a life interest in a certain tract of land located in Alabama, near which place Lee lived. It is claimed by Lee that White authorized Sheely to act for him as his agent in negotiating a sale of his interest in this property, and it is claimed by Lee that Sheely did act as agent, and contracted to sell the property to him for a certain price and on certain terms, agreed upon and consented to and ratified by

White. The testimony shows that at or about the time Sheely negotiated the trade with Lee, claiming to act as agent for White, he collected from Lee the sum of $200 as a payment on the purchase price. This $200 was appropriated by Sheely to his own use, and it is claimed by him that it was done with the consent of White, and was a part of the commissions agreed to be paid to him by White for negotiating the sale. White denies he knew that Sheely had collected the $200, and denies that he had ever given Sheely any authority either to collect the $200 or to represent him in negotiating a sale of the property. In short, White denies the agency of Sheely in toto. White refused to complete the trade negotiated by Sheely, whereupon Lee sued both White and Sheely to recover the $200. All transactions were shown to have been verbal, and it is also shown that Sheely is insolvent.

The testimony in the case is conflicting, and the jury might have found a verdict in favor of either party. In this condition of the testimony, the court gave the seventh instruction, which is as follows, viz.: "The court charges the jury that every agent is impliedly authorized to do all acts that are usual and customary to effectuate the real purpose of the agency; and if the jury believe from the evidence that White desired and requested Sheely to fix the trade so Lee could not back out, and that in collecting the $200 and receipting for it Sheely was acting in good faith, for and on behalf of White, with a view of binding the trade, and that the collection of the $200 was a reasonable precaution on the part of Sheely in the interest of White, then Sheely was authorized to collect it, in law, whether expressly authorized by White or not."

This instruction does not correctly announce the law. If it be conceded as a matter of fact that White had employed Sheely to act as his agent, the record conclusively shows that no power of attorney had been given Sheely to make any con-

veyance of the property, either for cash or on credit. If Sheely had any authority to act for White, as the record now stands, it was a mere oral authority to negotiate the sale, which in itself did not carry with it any right impliedly to collect any part of the purchase money. In order to make a binding con- tract of sale, it was not necessary for Sheely to collect any part of the purchase money, and, even if White had directed Sheely to fix the trade so as to be binding, unless he had given him authority to collect a part of the purchase money, such an in struction would not have included this authority. Where one appoints an agent to sell lands merely, it seems to be well settled by the authorities that such agency does not carry with it any implied authority to collect payments. The mere fact that one employs an agent to sell lands does not imply any authority to collect the purchase money or to make the conveyance. Such authority must be expressly given. An agent can make a bind ing contract for his principal to convey, without authority to either collect the purchase money or make the actual convey ance. Again, the owner of land may be willing to trust an agent to negotiate a binding trade, but at the same time be un willing to trust the agent to collect the purchase price or make the conveyance. Such rights must be left in the principal, un less expressly delegated to the agent. See 31 Cyc. 1368, and authorities.

The seventh instruction is totally wrong in its announcement of the law, even if White did desire Sheely to make a binding trade, and so instructed Sheely. This instruction and desire was no warrant for Sheely's act in collecting any part of the purchase money. The instruction practically tells the jury that it does not make any difference whether White had au thorized Sheely to collect this money or not, yet if Sheely did exceed his authority and collect it anyway, believing that such course was necessary in order to make a binding trade, then

Sheely had a right to collect it, and if he misapplied it White is responsible. No agent can increase and enlarge his authority by unauthorized acts. The principal cannot be made liable for the act of the agent as regards third persons, unless the act of the agent is within the ordinary and usual scope of the actual or apparent authority of the agent. When the agent is employed merely for the purpose of negotiating a sale of real estate, with no power to convey, such agency carries with it no apparent authority to collect the purchase price. It would seem that the mere fact that it must necessarily have been known to Lee that Sheely had no power of attorney to convey was bound to put him on notice of the fact that he could not collect the purchase price.

*Reversed and remanded.*